# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01CR0063 | **DATE** | January 11, 2002 |
| **CASE TITLE** | *United States v. Fassnacht and Malanga* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

### Parties' Pre-Trial Motions

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the accompanying memorandum, 1) Fassnacht's motion for a change of venue is denied, 2) Fassnacht's motion to dismiss count five for duplicity is denied, 3) Malanga's motion to strike misleading, irrelevant and prejudicial references in the indictment is denied without prejudice, and the defendants' joint motions: 4) to exclude hearsay statements of Donald Newell is granted to the extent that the government plans to offer Newell's statements for the truth of the matter asserted, 5) for timely production of exculpatory material and disclosure of impeachment information is granted, 6) for disclosure and limine pursuant to Federal Rules of Evidence 404(b) is granted, 7) for preservation of rough notes and other materials is granted, 8) for timely disclosure of government expert testimony is granted, and 9) for a bill of particulars is denied, and 10) the government's *Santiago* proffer is denied in part and granted

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | date docketed | | 45 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **Hon. Blanche M. Manning** |
| v. | ) | |
| | ) | **01 CR 0063** |
| JOHN FASSNACHT and | ) | |
| VINCENT MALANGA | ) | |
| | ) | |



## <u>MEMORANDUM AND ORDER</u>

Defendants John Fassnacht and Vincent Malanga are charged with conspiring to commit tax evasion, tax evasion, and obstruction of justice. Fassnacht is also separately charged with making false statements in an interview to an Internal Revenue Service ("IRS") agent. Before the Court are: 1) Defendant Fassnacht's motion for a change of venue, 2) Defendant Fassnacht's motion to dismiss count five of the indictment for duplicity, 3) Defendant Malanga's motion to strike misleading, irrelevant and prejudicial references in the indictment, and the following joint motions: 4) to exclude hearsay statements of Donald Newell, 5) for timely production of exculpatory material and disclosure of impeachment information, 6) for disclosure and limine pursuant to Federal Rules of Evidence 404(b), 7) for preservation of rough notes and other materials, 8) for timely disclosure of government expert testimony, and 9) for a bill of particulars, and 10) the government's evidentiary proffer supporting the admissibility of coconspirator statements ("*Santiago* proffer").

For the reasons that follow, 1) Fassnacht's motion for a change of venue is denied, 2) Fassnacht's motion to dismiss count five for duplicity is denied, 3) Malanga's motion to strike

1

misleading, irrelevant and prejudicial references in the indictment is denied without prejudice, and the defendants' joint motions: 4) to exclude hearsay statements of Donald Newell is granted to the extent that the government plans to offer Newell's statements for the truth of the matter asserted, 5) for timely production of exculpatory material and disclosure of impeachment information is granted, 6) for disclosure and limine pursuant to Federal Rules of Evidence 404(b) is granted, 7) for preservation of rough notes and other materials is granted, 8) for timely disclosure of government expert testimony is granted, and 9) for a bill of particulars is denied, and 10) the government's *Santiago* proffer is denied in part and granted in part.

## I.    Background[1]

Defendants Vincent Malanga and John Fassnacht are charged with conspiring to commit tax evasion (count one), tax evasion in connection with Newell's and Malanga's 1994 federal income tax returns (counts two and three) and obstruction of justice (count four). In addition, Fassnacht is also separately charged with making false statements in his interview with an IRS agent (count five). According to the indictment, Donald Newell and Defendant Malanga owned and operated an investment firm named LaSalle Portfolio Management, Inc. ("LPM"). Newell ran the day-to-day operations from its offices in Chicago, Illinois, while Malanga provided his services from New York. In 1994, LPM was due to receive an incentive fee of $1.35 million dollars from an overseas client. Newell opened several bank accounts and formed and registered a company named LaSalle Portfolio Management Ltd. ("LPM Ltd.") on the island of Bermuda. Defendant John Fassnacht, an accountant in New Jersey, assisted Newell in the formation of

---

[1] The facts for the Background section are taken from the Indictment and the Government's Consolidated Response to Defendant's Pre-Trial Motions. Therefore, no findings of fact are made or implied, even though the statements are made affirmatively rather than with the constant use of the term "alleged."

2

LPM Ltd. Malanga and Newell owned LPM Ltd. as 50/50 partners, but Edmond Burke was listed as the shareholder. LPM Ltd. conducted no legitimate business of its own, but was formed to assist in hiding income from the IRS.

In March 1994, Newell directed LPM's client to deposit the incentive fee in a bank account in Bermuda held in the name of LPM Ltd. This was done to hide receipt of the payment and avoid reporting the fee as income on LPM's federal income tax return for 1994. Defendant Fassnacht prepared the tax returns for the LPM, Newell and Defendant Malanga. To the extent that LPM's tax returns are false, its shareholders' (Newell and Defendant Malanga) tax returns are false as well.

Two years later, Angela Dancisak, a former administrative assistant to Newell, informed the IRS of the previously described activities. The government executed a search warrant at LPM's Chicago offices on March 26, 1996, and conducted interviews with both Defendant Malanga (in-person in New York) and Defendant Fassnacht (over the telephone at his office in New Jersey). Unbeknownst to Malanga or Fassnacht, Newell agreed to cooperate with the government shortly thereafter. He tape-recorded conversations[2] with Malanga and Fassnacht, covering their attempts at obstructing justice and covering up their tax evasion. Newell later stopped cooperating with the government, and was convicted and sentenced on charges of filing false 1994 federal income tax returns for LPM and himself. The government has since immunized Newell and plans to call him to testify against Malanga and Fassnacht.

## II.     Discussion

---

[2] The topics of those conversations include their execution of the plan to defraud the IRS and their attempts to cover up the tax evasion.

## A.    Fassnacht's Motion for Change of Venue

Defendant Fassnacht moves for a change of venue to the District of New Jersey. Rule

21(b) of the Federal Rules of Criminal Procedure provides for the transfer of prosecutions "for

the convenience of parties and witnesses, and in the interests of justice." In evaluating whether a

transfer is proper under this standard, the Supreme Court has identified ten factors that should be

weighed: (1) location of the defendant; (2) location of possible witnesses; (3) location of events

in issue; (4) location of documents; (5) disruption of defendant's business unless the case is

transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place

of trial; (9) docket conditions of each district or division involved; and (10) any other special

elements which might affect the transfer. *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240,

243-44 (1964). None of these factors is dispositive–the district court must try to strike a balance

and determine which factors are of greatest importance. *United States v. Morrison*, 946 F.2d 484,

490 n.1 (7th Cir. 1991). Because Malanga has not also moved for a change of venue, Fassnacht's

request for a change of venue would result in a de facto severance requiring two trials. A

severance is rarely in the interest of justice because it "give[s] rise to a 'multiplication of

litigation' resulting in great inconvenience to the witnesses involved as well as considerable

expense to the government." *Id.* at 489 (citing *United States v. Zylstra*, 713 F.2d 1332, 1336 (7th

Cir. 1983)). With these standards in mind, the Court will address each factor in turn.

### 1.    Location of the Defendant

Fassnacht resides in Princeton, New Jersey with his wife and two small children. A trial

in Chicago could potentially deprive him of his family's support. However, a defendant's

residence is not the controlling factor in transfer decisions. *See Platt*, 376 U.S. at 245-46. For what it is worth, this factor weighs in favor of a transfer.

### 2. Location of Possible Witnesses

The defendant states that a trial in Chicago will significantly impair his ability to conduct his defense because nearly all of his substantive and character witnesses are from the New Jersey area.[3] Since all of the substantive counts against Fassnacht involve a significant mens rea element, a critical aspect of his defense will be the testimony of his witnesses that will show he did not act with the requisite fraudulent intent.

The government responds that it expects to call approximately six witnesses, including an IRS summary witness and the IRS case agent, from the Chicagoland or Wisconsin area. The one witness from Wisconsin lives within driving distance of Chicago. There are no lay witnesses outside the Chicagoland area that the government intends to call.

From these arguments alone, this factor seemingly weighs slightly in favor of a transfer. In cases involving fraud, where "the mens rea of the defendants and their general character will be of some consequence," the availability of character witnesses is given considerable weight. *United States v. Russell*, 582 F. Supp. 660, 663 (S.D.N.Y. 1984); *see United States v. Aronoff*, 463 F. Supp. 454, 458 (S.D.N.Y. 1978) (granting transfer where the location of character witnesses was significant). In a concurrence, Justice Murphy of the Supreme Court noted:

> Very often the difference between liberty and imprisonment in cases where the direct evidence offered by the government and the defendant is evenly balanced depends

---

[3] The defendant has offered to provide, under seal, the names of substantive witnesses who would testify in Fassnacht's defense. The court finds it unnecessary to review the list, instead construing the number and location of potential defense witnesses in the light most favorable to the defendant.

upon the presence of character witnesses. ... The inconvenience, expense and loss of time involved in transplanting these witnesses to testify in trials far removed from their homes are often too great to warrant their use. Moreover, they are likely to lose much of their effectiveness before a distant jury that knows nothing of their reputations.

*United States v. Johnson*, 323 U.S. 273, 279 (1944) (Murphy, J., concurring).

However, the government witnesses will also be subjected to the great inconvenience of testifying at an additional trial due to the severance that will result. They will have to travel to New Jersey and substantially repeat their testimony. Therefore, when the convenience to the witnesses is considered, this factor weighs against a transfer.

### 3. Location of Events in Issue

The defendant argues that the locus of the activities with respect to him is New Jersey. Fassnacht works and resides in the district of New Jersey. The only contact he had with Donald Newell was through a few direct meetings in New York or New Jersey or through phone calls made by Newell to Fassnacht, while Fassnacht was in New Jersey. However, this issue is not as lopsided as the defendant argues. Chicago is the nerve center of LPM. Also, as a resident of Winnetka, Illinois, Donald Newell's fraudulent tax return prepared by Fassnacht was presumptively filed in the Northern District of Illinois. Furthermore, the obstruction charges were also committed against the grand jury investigation located in Chicago, Illinois. Therefore, this factor weighs against a transfer.

### 4. Location of Documents

The defendant argues that most of the records that he would rely on in his defense will be from New Jersey, while the government counters by stating that all of the records of the underlying fraud, including all records from the offices of LPM, are located in Chicago. The

6

defendant concedes that the location of documents is not a significant factor because the documents can easily be moved here or to New Jersey. Accordingly, this factor is neutral with respect to a transfer.

### 5. Disruption of Defendant's Business unless Case is Transferred

Fassnacht is a senior vice president at PharmaNet, Inc., a New Jersey company. He argues that a trial in Chicago would result in extreme hardship to his business. The government responds that Fassnacht's employment will probably be disrupted regardless of where the trial is held, and that his access to his place of employment is not very important. The government's argument is unpersuasive. A few hours each weekday plus weekends could make a substantial difference to his business. *See Aronoff*, 463 F. Supp. at 459 (transfer allowed defendant to use evenings and weekends to maintain his failing business). Therefore, this factor weighs in favor of a transfer.

### 6. Expense to the Parties

Although neither party presented detailed expenses comparing the costs of trial in Chicago to New Jersey, an analysis can still be approximated. On the one hand, a trial in Chicago would require Fassnacht to temporarily give up his job and live in Chicago. His wife would be forced to choose between maintaining her home and small children and coming to Chicago to offer emotional support to her husband. Fassnacht would also be required to pay for the travel and lodging expenses of his witnesses.

On the other hand, a trial in New Jersey would require the government to pay for the travel and lodging of its six witnesses and prosecution team. It would also require Fassnacht to pay transportation and lodging costs for his counsel, albeit they can use their firm's offices in

7

New York. In addition, because of the severance issue, an additional trial will result in the government's increased cost of conducting an additional trial, albeit shorter than a single combined trial. Consequently, this factor weighs against a transfer.

### 7. Location of Counsel

The defendant argues that his counsel recognizes the burden placed on their client by a trial here and prefers a trial in New Jersey. Fassnacht's attorneys are located in Chicago and the prosecution is also located in Chicago; therefore, this factor weighs against a transfer.

### 8. Relative Accessibility of Place of Trial

Chicago and Philadelphia/Trenton are both metropolitan areas with easy access to commercial transportation; therefore, this factor is neutral.

### 9. Docket Conditions of Each District or Division Involved

This factor is also not an issue as Fassnacht acknowledges that either the District of New Jersey or the Northern District of Illinois could accommodate this trial.

### 10. Other Special Elements Affecting the Transfer

The biggest "special" element affecting the decision whether to grant Fassnacht's motion for a change of venue is the severance issue. Like in *Morrison*, Fassnacht argues that his residence, witnesses, and participation in the underlying tax evasion scheme all favor a transfer. But, as the *Morrison* court found, the fact that Fassnacht was charged as part of a conspiracy with another defendant (who is not moving for a transfer) weighs heavily against a transfer because of the "multiplication of litigation" that would result. 946 F.2d at 489. Either Fassnacht's witnesses have to travel to Chicago, or the government's witnesses would have to testify once in Chicago and again at a second trial to which they would have to travel to New Jersey.

8

Accordingly, considering all of the factors, Defendant Fassnacht's motion for a change of venue is denied.

**B.    Fassnacht's Motion to Dismiss Count Five for Duplicity**

Fassnacht also moves to dismiss count five of the indictment for duplicity. Count five of the indictment charges Fassnacht with knowingly making three material misrepresentations in a conversation with an IRS agent in violation of 18 U.S.C. § 1001. The government alleges that Fassnacht, in his interview with IRS Special Agent Kristine Tice, knowingly and willfully made three false statements:

> "a) a Swiss investor by the name of Ed Burke had referred a group of investors from Abu Dhabi to Donald Newell;
> b) Donald Newell and Ed Burke had a verbal agreement in 1993 that Ed Burke was entitled to a finder's fee for the referral and that the fee approximated one million dollars; and
> c) that one of the payments by the Abu Dhabi investors was to be used to pay Ed Burke."

"'Duplicity' is the joining of two or more offenses in a single count" *United States v. Marshall*, 75 F.3d 1097, 1111 (7th Cir. 1996). A duplicitous count poses several risks to a defendant, including "improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from less than unanimous verdict as to each separate offense." *Id.* Fassnacht's motion raises all of these concerns.

Duplicity exists when a count contains "more than one distinct and separate offense." *United States v. Berardi*, 675 F.2d 894, 897 (7th Cir. 1982). It does not exist if the count merely "charges the commission of a single offense by different means." *Id.*

Therefore, the issue becomes whether the indictment alleges in one count the commission of multiple acts in violation of the same statutory provision, which is permissible, or alleges separate and distinct offenses in the same count, which is not. *United States v. Orzechowski,* 547 F.2d 978, 986 (7th Cir. 1976).

In the case at bar, the indictment alleges three misrepresentations that constitute a single offense under 18 U.S.C. § 1001. Even though each allegation might support a separate violation of section 1001, they were all made on the same day in the same interview. Further, they all directly relate to the same events–the conspiracy to commit tax evasion, tax evasion, and obstruction of justice. In similar cases where a defendant is charged with knowingly making a false statement, "all the false declarations pertaining to that offense can be charged in one count without making that count duplicitous." *See United States v. Isaacs,* 493 F.2d 1124, 1155 (7th Cir. 1974). Accordingly, Fassnacht's motion to dismiss count five for duplicity is denied.

### C.     Malanga's Motion to Strike Misleading, Irrelevant and Prejudicial References in Indictment

Defendant Malanga moves the Court pursuant to Federal Rules of Criminal Procedure 7(d), or alternatively, Federal Rules of Evidence 403, to strike two statements in the indictment as misleading, irrelevant and unduly prejudicial. In paragraphs 18 and 19, the government charges:

> 18.     It was further part of the conspiracy that on or about April 2, 1996, in a conversation with Donald Newell in New York, defendant VINCENT

MALANGA acknowledged that he had never met Ed Burke and that they needed an invoice for the finder's fee. <u>Defendant VINCENT MALANGA also stated in connection to a former LPM employee whom they beleived[sic] had talked to authorities about the ADIA income and the Bermuda accounts that "She's gotta really suffer pain."</u>

19.     It was further part of the conspiracy that on or about April 5, 1996, in a telephone conversation with Donald Newell in Chicago, Illinois, <u>defendant VINCENT MALANGA, when asked if he was joking about harming the former LPM employee stated that nothing was imminent, it was not a near-term option and once they got out of their "mess", that they would have options.</u>

Malanga affirms in a sworn affidavit that the tape-recorded statements had nothing to do with the federal grand jury investigation into the LPM missing income, but were made in anger in response to the former office manager's embezzlement of over $100,000 and Newell's failure to pursue recovery of those funds.

Rule 7(d) of the Federal Rules of Criminal Procedure provides that a court on motion of the defendant may strike surplusage from an indictment. Surplusage is defined as "immaterial or irrelevant allegations in an indictment ... which may, however, be prejudicial." Fed. R. Crim. P. 7(d), Advisory Committee's Note. Federal Rules of Evidence 403 provides that evidence although relevant "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

After reviewing the transcript of the tapes, the Court finds that the statements, although prejudicial, are relevant to the underlying charges of tax evasion and obstruction of justice. The statements are relevant because they tend to show Malanga's consciousness of guilt. At this time, the Court does not find them to be substantially outweighed by the danger of unfair prejudice because it does not appear that the statements will be offered by the government to prove that Malanga intended to commit a criminal act against Dancisak. Just to show his guilty conscience. Accordingly, Malanga's motion to strike misleading, irrelevant and prejudicial references in the indictment is denied without prejudice. The Court may reconsider should the context change during the presentation of the government's case in chief. Before any evidence relating to this statement is elicited, the government must alert the Court to such plans.

### D. Defendants' Joint Motion to Exclude Hearsay Statements of Donald Newell

The defendants also move to exclude from evidence the tape-recorded statements of Donald Newell as hearsay. The government responds that Newell's statements are admissible to provide the necessary context for the jury to understand both Malanga's and Fassnacht's statements to Newell during the course of their conspiracy.

Because Newell ceased being a co-conspirator at the time he became a government informant, his tape-recorded statements are inadmissible against the defendants if offered to prove the truth of the matter asserted. *See United States v. Felton*, 908 F.2d 186, 188 n.3 (7th

Cir. 1990) (statements of a government informant cannot be admitted as co-conspirator statements). Nevertheless, they are admissible to provide the defendants' statements the necessary context and meaning. *United States v. Davis*, 890 F.2d 1373, 1380 (7th Cir. 1989). In *Davis*, the Seventh Circuit held that all of a tape recorded conversation between a defendant and a third party informant was admissible when the defendant's statements were offered as verbal acts or admissions and the third party's statements were necessary to place the defendant's statements in a proper context. *Id.* Therefore, the defendants' motion to exclude the tape-recorded hearsay statements of Donald Newell is granted, but only to the extent that the statements are offered for the truth of the matter asserted. Should matters arise during the presentation of evidence in a context that suggests the statements are indeed being offered for the truth of the matter asserted therein, defense counsel must be vigilant in raising an objection and the Court will reconsider its prior ruling.

E.    **Defendants' Joint Motion for Timely Production of Exculpatory Material and Disclosure of Impeachment Information**

The defendants next move pursuant to Federal Rule of Criminal Procedure 16(a)(1), *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny, for an order compelling the government to produce exculpatory material and disclose impeachment information in a timely fashion. The government acknowledges its obligations and agrees to disclose any favorable material evidence to the defendant. Therefore, the defendants' motion is granted.

F.    **Defendants' Joint Motion for Disclosure and Limine Pursuant to Federal Rules of Evidence 404(b)**

The defendants also seek to require the government to give notice of its intention to use other crimes, wrongs, or acts evidence under Federal Rules of Evidence 404(b). Rule 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that he likely acted in conformity therewith on a particular occasion. The rationale for the exclusion of such evidence is that it is of slight probative value and tends to distract the jury from the facts at issue in the case before it. *United States v. Smith*, 103 F.3d 600, 602 (7th Cir. 1996). This evidence may be admissible, however, for any other relevant purpose including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." *Id.*

Federal Rule of Evidence 404(b) requires that the government in a criminal case, upon request of an accused, provide reasonable advance notice of its intention to use such evidence and the general nature thereof. This rule does not provide for unbridled discovery and, to that end, the government need only "apprise the defense of the general nature of the evidence of extrinsic acts." *Id.*

The government acknowledges its obligations under Rule 404(b) and indicates that it does not intend to offer any Rule 404(b) evidence at this time. However, the government does state that it intends to introduce evidence of other bad acts relating to the tax scheme to hide LPM Inc. income in Bermuda and the orchestration of various transactions to conceal or otherwise make transactions concerning LPM Inc. and LPM Ltd appear legitimate and true. The Court finds that the general statement in the government's response is not sufficient enough to apprise the defendants of the nature of these other bad acts. Accordingly, the defendants motion

for disclosure and limine pursuant to Federal Rules of Evidence 404(b) is granted, and the government is directed to disclose this evidence to the defendants no later than 12p.m., Monday, January 14, 2002.

### G. Defendants' Joint Motion for Preservation of Rough Notes and Other Materials

The defendants move for an order requiring government agents to preserve all notes, memoranda, or other recordings of facts gathered during the investigation of this case. The government does not oppose this motion, and therefore, this motion is granted.

### H. Defendants' Joint Motion for Timely Disclosure of Government Expert Testimony

The defendants move for the government to disclose a written summary of any expert testimony it intends to use under Federal Rules of Evidence 702, 703 or 705. The government has responded that it intends to call IRS Agent Robert Ellis, or another revenue agent, as an expert witness to explain the tax consequences of the omission of the $1.3 million dollars in income from the corporate return for LPM Inc. and the effect on the shareholders' individual income tax returns. The defendants motion is granted, although the government has satisfied its obligations.

### I. Defendants' Joint Motion for a Bill of Particulars

The defendants also move for a bill of particulars pursuant to Federal Rules of Criminal Procedure 7(f). They primarily object to the organization of the indictment. Specifically, they object to the inclusion of paragraphs one through twenty-six in count one (conspiracy to commit tax evasion) of the indictment in the remaining counts that do not charge them with conspiracy.

The defendants also claim that no specific overt acts[4] are delineated in count one. In the indictment, the government simply alleges that each of the overt acts in paragraphs eleven through twenty-six are overt acts.

A bill of particulars is unnecessary if the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial. A defendant is not entitled to know the details of how the government plans to prove its case; he is only entitled to be informed of the charges against him. *See United States v. Richardson*, 130 F.3d 765, 776 (7th Cir. 1997)*; see also United States v. Vasquez-Ruiz*, 136 F. Supp.2d 941, 942 (N.D. Ill. 2001). The court can consider the complexity of the charges, the clarity of the indictment, and the degree of discovery available to the defense absent a bill of particulars when considering whether to grant a bill of particulars. *Vasquez-Ruiz*, 136 F.Supp.2d at 942. Further, "'in reviewing the sufficiency of an indictment, a court should consider the challenged count as a whole and should refrain from reading it in a hyper-technical manner.'" *United States v. Glecier*, 923 F.2d 496, 499 (7th Cir. 1991) (citing *United States v. Gironda*, 758 F.2d 1201, 1209 (7th Cir. 1985)).

In the case at bar, the government presents a fourteen page, five-count charging document. Taken as a whole, the indictment is sufficiently specific and informative to apprise each of the defendants of the nature of the charges and to enable them to prepare a defense. The indictment is centered on a single act: the alleged attempt to evade paying taxes on income

---

[4] The elements of a conspiracy to defraud the United States under 18 U.S.C. § 371 are 1) an agreement to accomplish an illegal objective against the U.S.; 2) one or more overt acts in furtherance of the illegal purpose; and 3) the intent to commit the substantive offense of defrauding the U.S. *See United States v. Jackson*, 33 F.3d 866, 872 (7th Cir. 1994).

generated from payment of an incentive fee by funneling the money through an offshore bank account. The conspiracy to commit tax evasion (count one), the actual tax evasions (counts two and three), obstruction of the grand jury investigation (count four) and lying in an interview to an IRS agent (count five) are all clearly detailed, including dates, places, names, etc. Although the indictment as written includes some allegations not relevant to a particular count, the Court finds that it is sufficient to inform the defendants of the charges against them. Therefore, the motion for a bill of particulars is denied.

### J.  Government's *Santiago* Proffer

Pursuant to Federal Rule of Evidence 801(d)(2)(E) and *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1987), the Government seeks to offer the testimony of Newell as a co-conspirator of the defendants, and the contents of the taped conversations between himself and the defendants while he was cooperating with the government. Newell is expected to testify to each defendant's participation in the tax evasion scheme and their subsequent attempt to obstruct the grand jury investigation and lie to the IRS. The recorded conversations will be offered to reflect the same.

Under Federal Rule of Evidence 801(d)(2)(E), statements made by a co-conspirator of a defendant during the course of and in furtherance of the conspiracy are not hearsay when offered against a defendant. Fed. R. Evid. 801(d)(2)(E). Before allowing these statements into evidence, however, the government must demonstrate by a preponderance of the evidence that "(1) a conspiracy existed, (2) the defendant and the declarant were members thereof, and (3) the proffered statements were made during the course of and in furtherance of the conspiracy." *United States v. Cox,* 923 F.2d 519, 516 (7th Cir.1991). In making this determination, the court

"may examine the hearsay statements sought to be admitted." *Bourjaily v. United States*, 483

U.S. 171, 181 (1987).

In determining whether a statement was made "in furtherance" of the conspiracy, all that

is necessary is a reasonable basis upon which the court could conclude that the statement

furthered the objectives of the conspiracy. *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir.

1987). Under this standard, a statement can be considered "in furtherance of the conspiracy" even

though it is susceptible to different interpretations or was not made exclusively (or even

primarily) to further the conspiracy's objectives. *Id.*

So long as a statement is "part of the information flow between conspirators intended to

help each perform his role" it is admissible. *United States v. Van Daal Wyk,* 840 F.2d 494, 499

(7th Cir. 1988). Statements that further the objectives of a conspiracy include those that: (1) are

an attempt to recruit potential co-conspirators, *see Shoffner,* 826 F.2d at 628; (2) seek to control

damage to an ongoing conspiracy, *see Van Daal Wyk,* 840 F.2d at 499; (3) are made to keep

co-conspirators advised of the progress of the conspiracy, *see United States v. Potts*, 840 F.2d

368, 371 (7th Cir. 1987); and (4) attempt to conceal the conspiracy, *see United States v. Kaden,*

819 F.2d 813, 820 (7th Cir. 1987).

The problem for the government is that after March 26, 1996, when Newell became a

government informant, he ceased being a co-conspirator. Therefore, as discussed above, his

tape-recorded statements are inadmissible against the defendants if offered to prove the truth of

the matter asserted. *See United States v. Felton*, 908 F.2d 186, 188 n.3 (7th Cir. 1990)

(statements of a government informant cannot be admitted as co-conspirator statements).

Accordingly, the Court concludes that the government has not established by a preponderance of the evidence that Newell's tape-recorded statements fall within the scope of Rule 801(d)(2)(E).

Nevertheless, the Court finds that the government's written proffer as to the non-tape-recorded statements made by Newell before becoming a government informant carefully describe: (1) the details of the alleged tax evasion scheme; (2) the actions of Defendants Malanga and Fassnacht relating to the alleged transactions and schemes; and (3) the communications that occurred between the defendants and Newell during the course of and in furtherance of the alleged conspiracies. Based upon the written *Santiago* proffer, the Court finds that it is more likely than not that: (1) a conspiracy existed; (2) the defendants participated in the conspiracy; and (3) the non-tape-recorded statements were made "during the course of and in furtherance of" the conspiracy. Therefore, the Court preliminarily rules that Newell's non-tape recorded statements made prior to March 26, 1996 are conditionally admissible pursuant to Rule 801(d)(2)(E)–subject to proof of the conspiracy at trial. *See Santiago,* 582 F.2d at 1131; *Cox,* 923 F.2d at 526.

The Court will make a final determination as to the admissibility of the specific statements at the appropriate time. If the Government fails to elicit the testimony outlined in the *Santiago* proffer at trial, the Court will entertain objections to those statements at that time.

### III.   Conclusion

For the reasons stated above:

1.   Fassnacht's motion for a change of venue is denied;

2.   Fassnacht's motion to dismiss count five for duplicity is denied;

19

3. Malanga's motion to strike misleading, irrelevant and prejudicial references in the indictment is denied without prejudice;

4. Defendants' joint motion to exclude the tape-recorded statements of Donald Newell as hearsay is granted to the extent that the government plans to offer Newell's statements for the truth of the matter asserted;

5. Defendants' joint motion for timely production of exculpatory material and disclosure of impeachment information is granted;

6. Defendants' joint motion for disclosure and limine pursuant to Federal Rules of Evidence 404(b) is granted;

7. Defendants' joint motion for preservation of rough notes and other materials is granted;

8. Defendants' joint motion for timely disclosure of government expert testimony is granted;

9. Defendants' joint motion for a bill of particulars is denied; and

10. Government's *Santiago* proffer is denied in part and granted in part. The proffer as it relates to the tape-recorded statements made by Newell while he was a confidential informant is denied, while the non-tape-recorded statements made by Newell prior to his cooperation with the government is granted.

IT IS SO ORDERED.

Enter:

Blanche M. Manning
U.S. District Court Judge

Date: January 11, 2002

20