Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 63 | **DATE** | July 18, 2002 |
| **CASE TITLE** | *United States of America v. John Fassnacht and Vincent Malanga* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, this Court DENIES Defendants John Fassnacht and Vincent Malanga's Motions for Judgment of Acquittal [73-1, 74-1, and 75-1]. It is so ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 24 2002 | |
| | Notified counsel by telephone. | U.S. DISTRICT COURT | date docketed | 86 |
| | Docketing to mail notices. | 02 JUL 23 PM 1:05 | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED-03-114 | date mailed notice | |
| RTS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Hon. Blanche M. Manning |
| v. | ) | |
| | ) | 01 CR 0063 |
| JOHN FASSNACHT and | ) | |
| VINCENT MALANGA | ) | |

DOCKETED JUL 24 2002

## MEMORANDUM AND ORDER

Defendants John Fassnacht and Vincent Malanga, pursuant to Federal Rule of Criminal Procedure 29, have moved this Court for a judgement of acquittal as to Count 4, the sole count on which they were found guilty by a jury. For the reasons set forth below, this Court DENIES Defendants' motions.

## BACKGROUND[1]

The Indictment charged Defendants with: (1) conspiring to commit tax evasion, in violation of 18 U.S.C. § 371 (Count 1); (2) tax evasion, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2 (Counts 2 and 3); and (3) obstruction of justice, in violation of 18 U.S.C. § 1503(a) (Count 4). The Indictment also separately charged Fassnacht with making false statements to an Internal Revenue Service ("IRS") agent, in violation of 18 U.S.C. § 1001 (Count 5).

Malanga, along with Donald Newell, were partners in an investment firm named LaSalle Portfolio Management, Inc. ("LPM"). Fassnacht is an accountant who rendered advice to LPM during the relevant time period. LPM provided clients with investment advice based, in part, on

---

[1] A complete summary of the indictment and the facts of this case are contained in this Court's January 11, 2002 Memorandum and Order, and thus, the Court will only review the facts as they relate to the instant motions.

its "proprietary discretionary trading program, which invested customers' money in futures and option contracts in interest rate sensitive investments."

One of LPM's clients was Abu Dhabi Investment Authority ("ADIA"), which invested $85 million with LPM. In 1994, LPM was due to receive an incentive fee of $1.35 million from ADIA. In anticipation of receiving this fee, LPM, with the assistance of Fassnacht, formed and registered a company named LaSalle Portfolio Management Ltd. ("LPM Ltd.") in Bermuda and opened several bank accounts in Bermuda for LPM Ltd. Malanga and Newell owned LPM Ltd. as 50/50 partners. LPM Ltd. conducted no legitimate business of its own, but was allegedly formed to avoid reporting the ADIA fee as income on LPM's federal income tax return for 1994.

In March 1994, LPM directed ADIA to deposit the $1.35 million incentive fee in an LPM Ltd. bank account in Bermuda. Fassnacht prepared the tax returns for LPM, Newell and Malanga, which did not include the $1.35 million which was deposited in LPM Ltd.'s Bermuda account.

Two years later, Angela Dancisak, a former employee of LPM, informed the IRS of Defendants' alleged illegal conduct. Subsequently, a grand jury was convened and the IRS began conducting an investigation. The IRS executed a search warrant at LPM's Chicago offices on March 26, 1996, and conducted interviews with Malanga, Fassnacht, and Newell.

After the commencement of the investigation, Newell, on the advice of his attorney, began secretly tape recording his conversations with Defendants regarding the LPM Ltd. transactions and the Government's investigation. After recording

conversations on his own, Newell agreed to cooperate with the Government and began recording conversations at the behest of the Government.

Newell later stopped cooperating with the Government, and was convicted in a separate proceeding and sentenced on charges of filing false 1994 federal income tax returns for LPM and himself. At Defendants' trial, the Government immunized Newell and presented him as its main witness against Defendants. Newell testified that after learning of the IRS and grand jury investigation, Defendants proceeded to concoct a plan to end the investigation. The plan called for an individual named Ed Burke, a citizen of Switzerland, to come forward and falsely state that the $1.35 million in the LPM Inc. account in Bermuda was a finders fee which he earned for introducing LPM to ADIA. In exchange for this story, Burke was to be paid 10 to 20 percent of the $1.35 million. To corroborate Burke's story, Defendants conspired to prepare false documents including invoices, corporate records, and phone and travel records.

At the conclusion of the Government's case in chief, this Court granted Defendants' Motions for Judgment of Acquittal as to Counts 2 and 3 and denied the motions as to Counts 1, 4, and 5. At the conclusion of the trial, the jury found Defendants not guilty as to Counts 1 and 5 and guilty as to Count 4. Subsequently, Defendants have moved this Court for a judgement of acquittal as to Count 4.

## STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 29, a court may acquit a defendant on "one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." When

3

reviewing a motion for judgment of acquittal pursuant to Rule 29, the Seventh Circuit mandates that the district court determine:

> whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendants] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government . . . bearing in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences.

United States v. Reed, 875 F.2d 107, 111 (7th Cir. 1989). In short, the court views all the evidence in the Government's favor and is absolutely barred from second-guessing the jury's credibility determinations or findings of fact. Id. Instead, the court merely assesses the record to determine if all the admissible evidence supports the defendants' adjudication of guilt beyond a reasonable doubt. Id.

## ANALYSIS

Defendants have moved this Court for a judgement of acquittal on Count 4 on the grounds that: (I) the conduct proven at trial did not violate section 1503, and therefore, the evidence was insufficient to support the jury's verdict; and (II) Count 4 failed to adequately apprise them of the charge of obstruction of justice. The Court will address each of these contentions in turn.

### I.  Conduct Constituting Obstruction of Justice Under Section 1503

Section 1503 contains a "catch-all provision," United States v. Cueto, 151 F.3d 620, 630 (7th 1998), which states that a defendant is guilty of obstruction of justice by "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes or endeavors to influence obstruct or impede, the due administration of law." 18 U.S.C. § 1503(a). Congress enacted the "catch-all provision" to ensure that criminal defendants could not

"circumvent the statute's purpose by devising novel and creative schemes that would interfere with the administration of justice but would nevertheless fall outside the scope of § 1503's specific prohibitions." Cueto, 151 F.3d at 630. In accordance with Congress' intent, courts interpret this provision to "cover a broad spectrum of conduct" so as "to promote the administration of justice and to prevent the miscarriage of justice." Id. at 631. Consequently, courts hold that the defendant does not need to successfully obstruct the administration of justice to fall within the scope of section 1503. Id. at 633. See also United States v. Bucey, 876 F.2d 1297, 1314 (7th Cir. 1989)("the impossibility of accomplishing the goal of an obstruction of justice does not prevent a prosecution for the endeavor to accomplish the goal").

To convict a defendant under the "catch-all provision," the Government must prove: (1) that the defendant (a) knew of a "pending judicial proceeding"; and (b) acted corruptly with the intent to influence, obstruct, or impede or endeavor to influence, obstruct or impede the due administration of justice; and (2) a "nexus between the defendant's efforts and the judicial proceeding." Cueto, 151 F.3d at 633.

Here, Defendants contend that the Government failed to present sufficient evidence that: (A) Malanga had knowledge of a pending judicial proceeding; (B) Defendants corruptly intended to obstruct justice; (C) Defendants actually obstructed, interfered with, or impeded a judicial proceeding; and (D) Fassnacht had a motive to obstruct justice. The Court will discuss each of these contentions in turn.

### A. Knowledge of a Pending Judicial Proceedings

A judicial proceeding is pending when an investigation is undertaken to secure presentation of evidence before the grand jury. See United States v. McComb, 744 F.2d 555, 559 (7th Cir. 1984). See also United States v. Maloney, 71 F.3d 645, (7th Cir. 1996) ("[i]t is

5

well established that investigations undertaken with the intention of presenting evidence before a grand jury are sufficient to constitute the due administration of justice under § 1503"). To satisfy section 1503(a)'s knowledge requirement, the Government is required to show that the defendant had knowledge that a grand jury was conducting an investigation. Maloney, 71 F.3d at 656; United States v. Guzzino, 810 F.2d 687, 696 (7th Cir. 1987).

Here, the Government presented both circumstantial and direct evidence that Malanga had knowledge that the grand jury was investigating LPM's use of off-shore accounts to hide income from the IRS. On March 26, 1996, a search warrant was executed on LPM's offices in Chicago as part of the grand jury's investigation. The next week, on April 1, 1996, the grand jury issued a subpoena to Fassnacht requiring him to provide documents related to LPM and ADIA. The same day on which the subpoena was issued, Fassnacht was interviewed by Agent Tice. Over the next couple of days, April 2 -3, 1996, Malanga discussed the grand jury investigation with Fassnacht and Newell, in particular, the proposed testimony which Ed Burke and Fassnacht would present to the grand jury. In a conversation recorded by Newell on April 3, and played at the trial, Malanga specifically stated that Fassnacht's grand jury testimony was postponed. Moreover, Newell testified that during a meeting between himself and Defendants, regarding the planning of the Burke story, the grand jury investigation was specifically discussed. Consequently, interpreting the evidence in the light most favorable to the Government, this Court finds that the jury could reasonably have found beyond a reasonable doubt that Malanga had knowledge of the grand jury investigation of LPM.

### B. Corruptly Intending to Obstruct Justice

Section 1503 also requires the Government to prove that Defendant corruptly endeavored to obstruct the due administration of justice. The term "corruptly," as used in section 1503, has

6

been defined as an act done "with the purpose of obstructing justice." United States v. Machi, 811 F.2d 991, 996 (7 th Cir. 1987). See also Cueto, 151 F.3d at 630-31 (affirming a jury instruction that defined "corruptly" as "to act with the purpose of obstructing justice"); United States v. Rasheed, 663 F.2d 843, 852 (9th Cir. 1981) (purposeful concealment of documents from a grand jury "can fall within the prohibitions of the statute"). "Endeavor" has been defined as "any effort or assay to obstruct justice." United States v. Barfield, 999 F.2d 1520, 1523 (11th Cir. 1993). Courts generally hold that "endeavor" denotes a lesser threshold of purposeful activity than "attempt." See United States v. Thomas, 916 F.2d 647, (11th Cir.1990); "Obstruction of Justice," American Criminal Law Review (Summer 2001) (citing cases). To prove a "corrupt endeavor" to obstruct justice, the Government must prove that "the defendant knowingly and intentionally undertook an action from which obstruction of justice was a reasonably foreseeable result." Barfield, 999 F.2d at 1523, 1524. The endeavor need not be successful as long as the Government shows that the defendant had "knowledge or notice that his actions [were] likely to affect the just administration of the subject proceedings." Cueto, 151 F.3d at 633. See also United States v. Aguliar, 515 U.S. 593, 599 (1995); United States v. Buckley, 192 F.3d 708, 710 (7th Cir. 1999). Moreover, the Government need not present direct proof of the defendant's corrupt intent; the jury may "infer" the defendant's intent "from all the surrounding facts and circumstances." McComb, 744 F.2d at 561. See also Cueto, 151 F.3d at 630-31, 633; Furkin, 119 F.3d at 1283.

Moreover, a defendant may be convicted of corruptly endeavoring to obstruct justice even when the object of the endeavor was an undercover government agent or informant. See United States v. Bucey, 876 F.2d 1297, 1314 (7th Cir. 1989). The false statement need not actually be presented to the grand jury or relied upon or delivered; the mere existence of such a

7

statement makes it far more likely that the statement would be produced in court, with the natural and probable consequence of obstructing the due administration of justice. See United States v. Barber, 881 F.2d 345, 351 (7th Cir. 1989).

Here, the Government presented both circumstantial and direct evidence that Defendants intended to corruptly endeavor to interfere, obstruct, or impede the grand jury's investigation into LPM. On March 26, 1996, the day the search warrant was served on LPM, Malanga falsely told the IRS that the payment from ADIA was deposited in Bermuda to pay Ed Burke a finder's fee for introducing ADIA to LPM. Likewise, after receiving the grand jury subpoena, Fassnacht told the IRS the same story about Burke and the money in Bermuda.

Defendants contend that this conduct does not fall within the scope of section 1503 because the story about Burke was told to IRS agents and not to the grand jury. While it is true that simply lying to a government agent without knowledge of a grand jury proceeding does not violate section 1503, see Unied States v. Aguilar, 515 U.S. 593, 599 (1995), a defendant violates section 1503 where the defendant lies to a government agent and the defendant is "aware that the [agent] was integrally involved in the grand jury investigation." United States v. Furkin, 119 F.3d 1276, 1282 (7th Cir. 1997 ). In Furkin, the Seventh Circuit rejected Defendants' exact argument and held that "[t]he IRS investigation was not some 'ancillary proceeding' unrelated to the grand jury proceeding. Indeed, the IRS investigation and the grand jury investigation were one and the same, and the evidence established that [the defendant] understood this fact." 119 F.3d at 1283. Here, as explained above, the Government presented evidence that Defendants knew that the IRS investigation was being conducted to present evidence to the grand jury.

Moreover, the fact that Defendants lied to the IRS was not the sole basis of the Government's evidence that Defendants corruptly intended to endeavor to obstruct the grand

8

jury. The Government presented evidence showing that Malanga and Fassnacht conspired to ensure that Burke would "back-up" Defendants' story to the IRS. In exchange for providing the finders fee story, Burke was to receive ten to twenty percent of the funds from the Bermuda account.

To corroborate Burke's story, Fassnacht stressed to Newell the importance of having Burke provide an invoice or "any other documentation" for the work he allegedly did for LPM in 1994. Likewise, Malanga told Newell that they would have to put together documents to support Burke's story. Subsequently, at Defendants' direction, Newell received a false invoice from Burke in Switzerland for $1.35 million for a finders fee he allegedly earned in 1993-94 for introducing ADIA and LPM. Additionally, Newell, at the direction of Defendants, created a false "itinerary" setting forth the chronology of the false finders fee story.[11]

Consequently, interpreting the evidence in the light most favorable to the Government, this Court finds that the jury could reasonably have found beyond a reasonable doubt that Defendants knew or reasonably should have known that their actions were likely to affect the just administration of justice, and therefore, reasonably found that Defendants intended to corruptly endeavor to interfere, obstruct, or impede the grand jury's investigation into LPM.

### C. Acts Which Constitute Obstruction of Justice

Defendants further contend that they are entitled to a judgment of acquittal because the Government failed to show that they actually obstructed, interfered with, or impeded a judicial proceeding. Defendants, however, have misinterpreted the catch-all provision. Defendants did

---

[11] As long as the jury found that Defendants "corruptly endeavored to obstruct the administration of justice," whether Defendants used legal or illegal means to attempt to bring about this result is irrelevant under section 1503. See Cueto, 151 F.3d at 630-31.

9

not need to actually succeed, but as noted by the Seventh Circuit in Cueto, "[i]t is not the means employed by the defendant that are specifically prohibited by the omnibus provision ... but ... instead, the defendant's corrupt endeavor which motivated the action." 151 F.3d at 631, 633. As noted above, the Government need not show that Defendants' endeavors successfully interfered with the grand jury, only that Defendants' actions had the natural and probable consequence of obstructing the due administration of justice.

The Government contends that the evidence at trial was sufficient for the jury to reasonably find beyond a reasonable doubt that Defendants corruptly endeavored to: (1) conceal documents from the grand jury and/or produce false documents for introduction to the grand jury; and (2) encourage false testimony before the grand jury. The Court will examine each of these issues in turn.

### 1. Concealment, Alteration or Destruction of Documents

The concealment, alteration, and destruction of subpoenaed documents to a grand jury constitute a violation of section 1503. See Barber, 881 F.2d at 351; McComb, 744 F.2d at 559. The government need not prove that the documents are material, only that the documents could have altered or affected the grand jury's determination. See, e.g., Barber, 881 F.2d at 351. Where a defendant receives a grand jury subpoena for documents and intentionally conceals documents the defendant believes are covered under the subpoena, the defendant is guilty of obstruction of justice under section 1503. United States v. Lench, 806 F.2d 1443, 1444-45 (9th Cir. 1986).

Here, Fassnacht admitted, in a conversation taped by Newell, that he had not turned over all the documents requested in the grand jury subpoena. Additionally, as explained above, Defendants created, or caused to be created, false documents which they planed to use to bolster

10

the credibility of Burke's story. Consequently, interpreting the evidence in the light most favorable to the Government, this Court finds that the jury could reasonably have found beyond a reasonable doubt that Defendants concealed, altered, or destroyed documents that could have foreseeably affected the due administration of justice.

### 2. Encouraging False Testimony

A defendant also violates section 1503 by fabricating a "story for a potential witness to tell the grand jury, even though the witness has not been subpoenaed." McComb, 744 F.2d at 755. See also United States v. Arnold, 773 F.2d 823, 831-32 (7th Cir.1985). To fall within section 1503's prohibitions, the false statement need not actually be presented to a grand jury and the defendant does not need to have actually caused the witness to have testified falsely. Id. at 834. Rather, to prove obstruction of justice based on false testimony, the Government need only show that the defendant's acts had "a reasonable tendency to impede the witness in the discharge of her duties." Id. The Government need only show that the defendant intended to obstruct the due administration of justice by encouraging a prospective witness to render false testimony or tampering with the witness' prospective testimony. Id.; Maloney, 71 F.3d at 658-59. Because section 1503 encompasses "elliptical suggestions as much as it does direct commands," simply proposing to a potential witness that he lie in a judicial proceeding constitutes obstruction of justice. United States v. Trankos, 911 F.2d 1422, 1432 (10th Cir. 1990).

Here, as explained above, the Government showed that in exchange for ten to twenty percent of the money in the Bermuda account, Defendants attempted to ensure that Burke would "back-up" their story to the IRS by having him falsely state that the money put in Bermuda was to pay a finders fee to Burke, not to hide income from the IRS. Consequently, interpreting the evidence in the light most favorable to the Government, this Court finds that the jury could

11

reasonably have found beyond a reasonable doubt that Defendants took action which could have reasonably resulted in a witness giving false testimony which could have affected the grand jury's determination.

### D. Motive Under Section 1503

Fassnacht further contends that the Court should enter a judgment of acquittal because the Government failed to present sufficient evidence that he had a motive to obstruct justice. In response, the Government contends that motive is not an element of the offense of obstruction of justice under section 1503, and even if it is, Fassnacht has waived the issue because he did not object that motive was not included as an element of obstruction of justice in the jury instructions. The Government further contends that even if motive is an element, sufficient evidence was presented to show that Fassnacht had a motive to obstruct the grand jury – the avoidance of criminal liability for tax evasion.

Although the Seventh Circuit has not specifically ruled on the issue, a number of other circuits have held that section 1503 requires that the defendant must have had an "improper motive or purpose of obstructing justice." United States v. Brady, 168 F.3d 574, 579 n.3 (1st Cir. 1999). See also United States v. Barfield, 999 F.2d 1520, 1534 (11th Cir. 1993) ("[a]lthough the government is not required to prove that the defendant had the specific purpose of obstructing justice, it must establish that the conduct was prompted, at least in part, by a corrupt motive"); United States v. Lench, 806 F.2d 1443, 1446 (9th Cir. 1986) (noting that the defendant had a motive to obstruct justice); "Obstruction of Justice," American Criminal Law Review (Summer 2001) (citing cases).

Notwithstanding that the Seventh Circuit has yet to rule on the issue of motive, this Court finds that the Government presented sufficient evidence for the jury to reasonably find beyond a

12

reasonable doubt that Defendants' desire to avoid criminal liability for tax evasion was their motive to obstruct justice. For example, Newell testified that one of the reasons for creating the Burke story was that Fassnacht wanted the investigation "to stop as soon and as quickly as possible," so that it would not lead the Government into investigating other entities which he had set up in Bermuda for other clients. (Newell Tr. at 169.) Consequently, the Court finds that the Government presented sufficient evidence to allow the jury to reasonably conclude beyond a reasonable doubt that Fassnacht had a motive to obstruct the grand jury.

In conclusion, the Court finds that the conduct proven at trial violated section 1503, and that the evidence was sufficient to support the jury's verdict.

## II.     Sufficiency of Count 4

Defendants further contend that the Court should enter a judgment of acquittal because Count 4 failed to adequately apprise them of the charge of obstruction of justice and that the Court should have granted their pretrial motions for a bill of particulars.

Federal Rule of Criminal Procedure 7(c)(1) states that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." The test to determine whether an indictment sufficiently states a criminal charge is whether the indictment sets forth the elements of the offense charged, sufficiently apprises the defendant of the charges to enable him to prepare for trial, and enables the defendant to plead double jeopardy to a subsequent indictment for the same offense. McComb, 744 F.2d at 562; United States v. Garcia-Geronimo, 663 F.2d 738, 743 (7th Cir. 1981); United States v. Roya, 574 F.2d 386, 391 (7th Cir. 1978). Sufficiency should not be determined by whether the indictment could have been drafted more definite and certain. Garcia-Geronimo, 663 F.2d at 743.

13

Here, according to Defendants, because Count 4 incorporated by reference paragraphs 1-26 of Count 1, it was "patently unfair to hold Defendants responsible for defending every paragraph of Count One when a number of those acts or events plainly preceded the time frame charged." (Joint Mot. for Acquittal at 8.) Defendants contend that Count 4 is impermissibly vague because only one of the 26 paragraphs reference the grand jury investigations, while the rest focus on Defendants' alleged obstruction of the IRS investigation. Therefore, Defendants assert that this conduct cannot not fall within the scope of section 1503 because the story about Burke was told to IRS agents and not to the grand jury. As explained above, however, while it is true that simply lying to a government agent without knowledge of a grand jury proceeding does not violate section 1503, see Aguilar, 515 U.S. at 599, a defendant violates section 1503 where the defendant lies to a government agent and the defendant is "aware that the [agent] was integrally involved in the grand jury investigation." Furkin, 119 F.3d at 1282.

Count 4 tracks the language of section 1503 in alleging that from "approximately March 26, 1996 and continuing thereafter until in or about May 1996" Defendants "did corruptly endeavor to influence, obstruct and impede the due administration of justice namely, Federal Grand Jury investigation number 96 GJ 258 in the Northern District of Illinois." Count 4 also incorporates by reference paragraphs 1-26, which further detail the obstruction of justice allegations against Defendants. Paragraphs 10-26 detail Defendants' scheme to concoct a plan to end the grand jury investigation. The plan called for Ed Burke to come forward and falsely state that the $1.35 million in the LPM Inc. account in Bermuda was a finders fee which he earned for introducing LPM to ADIA. In exchange for this story, Burke was to be paid 10 to 20 percent of the $1.35 million. To corroborate Burke's story, Defendants conspired to prepare false

14

documents including invoices, corporate records, and phone and travel records. In addition to the Indictment itself, the Government provided Defendants with the tapes and transcripts from Newell, which further detailed the obstruction of justice allegations. Consequently, this Court finds that Count 4 sufficiently apprised Defendants of the charges against them to enable them to adequately prepare for trial.

Furthermore, Defendants contend that this Court should enter a judgment of acquittal because the Court should have granted their pretrial motions for a bill of particulars. As discussed in detail in the Court's January 11, 2002 Memorandum and Order, Defendants were not entitled to a bill of particulars because the indictment was sufficient to inform Defendants of the charges against them and to allow them to prepare for trial.

## CONCLUSION

For the forgoing reasons, this Court DENIES Defendants John Fassnacht and Vincent Malanga's Motions for Judgment of Acquittal [73-1, 74-1, and 75-1]. It is so ordered.

ENTER: *Blanche M. Manning*
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: 7-18-02