Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 63 | **DATE** | July 23, 2002 |
| **CASE TITLE** | *United States of America v. John Fassnacht and Vincent Malanga* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons set forth in the attached Memorandum and Order, this Court OVERRULES Defendants' Objections to the PSR and DENIES Defendants' Motions for Downward Departure and the Government's Motion for Upward Departure. It is so ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | JUL 24 2002 date docketed |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | docketing deputy initials |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 02 JUL 23 PM 1:05 | |
| RTS | courtroom deputy's initials | FILED-10 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 87

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Hon. Blanche M. Manning |
| v. | ) | |
| | ) | 01 CR 0063 |
| JOHN FASSNACHT and | ) | |
| VINCENT MALANGA | ) | |

DOCKETED JUL 24 2002

## MEMORANDUM AND ORDER

Defendants John Fassnacht and Vincent Malanga were indicted on charges of: (1) conspiring to commit tax evasion, in violation of 18 U.S.C. § 371 (Count 1); (2) tax evasion, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2 (Counts 2 and 3); and (3) obstruction of justice, in violation of 18 U.S.C. § 1503(a) (Count 4). The Indictment also separately charged Fassnacht with making false statements to an Internal Revenue Service ("IRS") agent, in violation of 18 U.S.C. § 1001 (Count 5). At the conclusion of the Government's case in chief, this Court granted Defendants' Motions for Judgment of Acquittal as to Counts 2 and 3 and denied the motions as to Counts 1, 4, and 5. At the conclusion of the trial, the jury found Defendants not guilty as to Counts 1 and 5 and guilty as to Count 4. Defendants subsequently moved this Court for a judgement of acquittal as to Count 4, which this Court denied in a Memorandum and Order issued on July 18, 2002.

Presently before this Court are the following motions regarding sentencing: (1) Defendants' Objections to the Presentence Investigation Report ("PSR") and Motions for Downward Departure; and (2) the Government's Motion for Upward Departure. The Court will discuss each of these issues in turn.[1]

---

[1] A complete summary of the indictment and the facts of this case are contained in this Court's January 11, 2002 and July 18, 2002 opinions, and thus, the Court will only review

87

## I. Calculation of Base Offense Level

Defendants object to the Probation Department's calculation of Defendants' base offense level as a 13. The Probation Department based its calculation on section 2J1.2 of the United States Sentencing Guidelines ("the Guidelines" or "U.S.S.G"). This section starts with a base offense level of 12, but states that: "[i]f the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above." Section 2J1.2(c)(1). Section 2X3.1(a) requires the court to take the base offense level for the underlying offense and reduce it by six levels. Because Defendants were convicted of obstructing a grand jury investigation into tax evasion, the Probation Department looked to the Guideline sections which govern tax evasion (sections 2T1.1 and 2T1.4). Under these sections the base offense level is 19. Consequently, by subtracting 6 levels, per section 2X3.1(a), the Probation Department arrived at a base offense level of 13.

Defendants object to the Probation Department's calculation on the grounds that it is improper to consider the tax evasion charges in calculating the base offense level for obstruction of justice because Defendants were not convicted on the tax counts. In support of this contention, Defendants cite a litany of cases for the proposition that courts should not consider conduct the defendant was not convicted of in computing the defendant's offense level.

Although this Court is inclined to agree with Defendants' position, this Court is required to follow the Guidelines. The Probation Department's calculation using section 2X3.1 and 2T1.1, regardless of the fact that Defendants were not convicted of tax evasion, is what the Guidelines

---

the facts as they relate to the instant motions.

2

require and is in tune with the circuit courts on this issue. See <u>United States v. Arias</u>, 253 F.3d 453, 458-59 (9th Cir. 2001) ("the cross reference in § 2J1.2(c)(1) must be applied without regard to the defendant's guilt on the underlying offenses"); <u>United States v. Russell</u>, 234 F.3d 404, 409 (8 th Cir. 2000) (holding that the section 2J1.2(c)(1) applies regardless of whether the defendants or anyone else was charged with committing the underlying offense); <u>United States v. Dickerson</u>, 114 F.3d 464, 468 (4 t h Cir. 1997) (application of section 2J1.2(c) "does not require [the] underlying offense to be an offense of conviction"); <u>United States v. McQueen</u>, 86 F.3d 180, 182 (11th Cir. 1996) ("[t]he language of § 2J2(c) is mandatory when the offense involves 'obstructing the investigation or prosecution of a criminal offense' without regard to whether defendant or anybody else was convicted of the underlying offense, or whether an offense could be shown to have been committed at all").

Accordingly, even though Defendants were not convicted of the underlying tax charges, because they were found guilty of obstructing the grand jury's investigation into the tax charges, the PSR correctly applied sections 2J1.2(a), 2X3.1(a), and 2T1.1 in calculating the base offense level. The Court thus OVERRULES Defendants' objections to the calculation of the base offense level in the PSR.

## II. Motion for Downward Departure

Defendants have moved for downward departure on the grounds that: (A) the conduct proven at trial was atypical of the usual conduct associated with obstruction of justice under 18 U.S.C. § 1503; (B) the current sentence is unjustifiably high as compared to the sentence of Defendants' coconspirator, Donald Newell, who was found guilty on two counts of tax evasion; (C) the Government used improper investigative techniques; (D) extraordinary family

3

circumstances exist; (5) Defendants' conduct constituted aberrant behavior; (E) Defendants minimally participated in the scheme to obstruct justice; and (F) the totality of the circumstance combine to require a downward departure.

Before discussing these contentions, the Court will first turn to the criteria for departing from the Guidelines. Generally, the sentencing court must impose a sentence falling within the applicable range set forth in the Guidelines. See Koon v. United States, 518 U.S. 81, 85 (1996). The court may, however, depart from the Guideline sentence if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). See also U.S.S.G. § 5K2.0; Koon, 518 U.S. at 92. Therefore, "[i]n the absence of a characteristic or circumstance that distinguishes a case as sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guideline range is not authorized." U.S.S.G. § 5K2.0, Comment.

Examining departures from the Guidelines, the Supreme Court in Koon explained that the Sentencing Commission intended "the sentencing courts to treat each guideline as carving out a 'heartland', a set of typical cases embodying the conduct that each guideline describes." Koon, 518 U.S. at 93 (quoting U.S.S.G. ch. 1, pt. A, intro. cmt. 4(b)). The Sentencing Commission, however, "did not adequately take into account cases that are, for one reason or another, unusual." Id. Thus, "[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." U.S.S.G. ch. 1, pt. A, intro. cmt. 4(b). Therefore,

4

before a sentencing court is permitted to depart from the Guidelines, the court must find that the case is "unusual" enough for it to fall outside the "heartland" of cases covered in the applicable guideline. See Koon, 518 U.S. at 93.

The Court in Koon set forth the following factors that sentencing courts should use in determining whether an upward departure from the applicable guidelines range is appropriate:

1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case?
2) Has the Commission forbidden departures based on those features?
3) If not, has the Commission encouraged departures based on those features?
4) If not, has the Commission discouraged departures based on those features?

Koon, 518 U.S. at 95. The Court went on to explain the mechanics of applying this framework:

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guidelines heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be highly infrequent.

Id. at 95-96 (citations and internal quotations omitted). The Guidelines seek to "aid the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines." U.S.S.G. § 5K2.0. These factors are listed in sections 5K2.1 to 5K2.17.

## A. Atypical Offense

Defendants contend that a downward departure is warranted because their "conduct falls outside the heartland of § 1503 obstruction of due administration of justice cases." Defendants contend that their conduct falls outside the typical obstruction case because neither Defendant attempted to influence a grand juror or witness subpoenaed by a grand jury nor suborned perjury to a grand jury. As explained in more detail in this Court's prior Memorandum and Order denying Defendants' motions for judgment of acquittal, this Court finds that the conduct of which the jury found Defendants guilty is not atypical of the conduct which section 1503 encompasses. See United States v. Furkin, 119 F.3d 1276, 1282 (7th Cir. 1997 ) (a defendant violates section 1503 where the defendant lies to a government agent and the defendant is "aware that the [agent] was integrally involved in the grand jury investigation"). Therefore, this Court will not exercise its discretion to depart downward from the Guidelines and DENIES the motion for downward departure on this ground.

## B. Disparity in Sentence

Defendants also contend that they are entitled to a downward departure based on the "unjustified disparity between their proposed sentences and the sentence [received by] their alleged co-conspirator, Donald Newell," who was sentenced to 30 months after being convicted of two counts of tax evasion, of which Defendants were found not guilty. Moreover, Newell, as Defendants point out, only served 14 months of his sentence.

With a Guideline range of 13 and a criminal history category of I, Defendants face a sentence between 12 to 18 months. Given that Newell was sentenced to 30 months, the Court fails to see that there is a disparity in the sentences. Moreover, the Seventh Circuit has

6

specifically rejected Defendants' contention in holding that "a disparity among co-defendants' sentences is not a valid basis to challenge a guideline sentence otherwise correctly calculated." United States v. Hall, 212 F.3d 1016, 1019 (7 th Cir. 2000). Accordingly, this Court, finds that the sentences of Defendants and Newell are not disparate, and therefore, this Court will not exercise its discretion to depart downward from the Guidelines and DENIES Defendants' motion for downward departure on disparity of sentences grounds.

### C. Improper Investigative Techniques

Defendants further contend that a downward departure is warranted because the Government used improper investigative techniques which led to "aggressive encouragement of wrongdoing" by co-conspirator Newell at the behest of the Government.

Section 5K2.12 of the Guidelines gives this Court the discretion to depart downward:

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.

See also United States v. Wright, 37 F.3d 358, 360-61 (7th Cir. 1994). Thus, this Court may depart downward if it finds that Defendants committed the defense because of "serious coercion."

Here, as discussed in more detail in this Court's prior Memorandum and Order denying Defendants' motion for judgment of acquittal, this Court finds that although Newell may have somewhat encouraged the obstruction, his actions did not amount to "serious coercion" to

7

necessitate a departure under section 5K2.12. For example, on March 26, 1996, the day the search warrant was served on LPM, Malanga falsely told the IRS that the payment from ADIA was deposited in Bermuda to pay Ed Burke a finder's fee for introducing ADIA to LPM. Likewise, after receiving the grand jury subpoena, Fassnacht told the IRS the same story about Burke and the money in Bermuda. Accordingly, this Court finds that Defendants were not "seriously coerced" into committing obstruction of justice, and therefore, this Court will not exercise its discretion to depart downward from the Guidelines and DENIES the motion for downward departure on the grounds of coercion.

### D.     Extraordinary Family Circumstances

Additionally, Fassnacht contends that he is entitled to a departure under section 5H1.6 because of extraordinary family circumstances.[2] Section 5H1.6 provides that "[f]amily ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6. The Sentencing Commission, however, advised that although "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range, [family circumstances] may be relevant to this determination in exceptional cases." U.S.S.G. Ch. FIVE, Pt. H, Refs & Annos. (citing, § 5K2.0 (Grounds for Departure)). The Seventh Circuit has interpreted the Guidelines to allow for a downward departure based upon a finding that "a defendant's family ties and responsibilities or community ties are so unusual that they may be characterized as extraordinary." United States v. Canoy, 38 F.3d 893, 907 (7th Cir.1994). In making a finding of

---

[2] Defendant Malanga has not moved for a downward departure based on family circumstances.

8

extraordinary family circumstances, the court must find that "the period of incarceration set by the Guidelines would have an effect on the family or family members beyond the disruption to family and parental relationships that would be present in the usual case." Id. Courts have implemented the extraordinary requirement because disruption to the defendant's life and family is "inherent in the punishment of incarceration." Id.

Here, Defendant Fassnacht contends that exceptional circumstances are present such as to warrant a section 5H1.6 departure. Fassnacht contends that if sentenced to prison, the welfare of his wife and two children – a one year old son and three year old daughter – will be jeopardized. Fassnacht's wife is the sole caregiver for his children, and will have to obtain employment if he is incarcerated. Moreover, he also contends that his sister, who is mentally challenged, will suffer because, although she is currently cared for by his 83 year old "ailing" mother, if something happens to his mother, he is the only person who will be able to care for his sister.

While sympathetic to his family's situation, this Court finds that Fassnacht's case does not rise to the level of extraordinary, as required by section 5H1.6. Fassnacht has over $3.5 million dollars in unencumbered assets, which would seem to keep his family afloat during Fassnacht's incarceration which will be between 12 to 18 months. Moreover, even if his wife would have to work, Fassnacht has not made a showing that it would cause undue hardship on his children. As for his mentally challenged sister, Fassnacht has not shown that his mother will be unable to care for her in the future or that she would not be able to be taken care of by someone other than himself if his mother was unable to care for her.

Consequently, this Court finds that the circumstances in this case are not extraordinary. In cases where courts have departed downward, the circumstances have been much more serious

9

than those present here. See United States v. Stefonek, 179 F.3d 1030, 1038 (7th Cir. 1999) (reconsideration of departure based on extraordinary family circumstances was warranted where defendant was a single mother of a 12-year old with learning problems; such reconsideration required a determination of whether child would suffer greater harm than normal child, what care would be available for child while defendant was in prison and whether professional assistance was available for the child); United States v. Owens, 145 F.3d 923, 929 (7th Cir. 1998) (affirming downward departure from imprisonment range of 168-210 months and imposing a sentence of 120 months in crack cocaine possession case; the defendant was primary support for wife and children; family would go on public assistance as a result of defendant's incarceration; defendant spent time every day with brother who suffered from Downs Syndrome); United States v. Gauvin, 173 F.3d 798, 806-08 (10th Cir. 1999) (14-month departure in case involving assault on federal officer with a dangerous weapon; the defendant was a father and supporter of his wife and four young children; wife could barely support family, and she was in danger of losing custody of the children); United States v. Galante, 111 F.3d 1029, 1035-36 (2nd Cir. 1997) (approving 13-level downward departure in a drug case to time served plus 24 months home detention for a defendant with two young children ages eight and nine; wife and children were uniquely dependent on the defendant because the wife was unable to speak English and could not support the family); United States v. Haversat, 22 F.3d 790, 797 (8th Cir. 1994) (departing downward where defendant's wife suffered from "severe" depression and the defendant was her primary caretaker); United States v. Sclamo, 997 F.2d 970, 973-74 (1st Cir. 1993) (affirming a downward departure where the defendant had developed a special relationship with the young son of a woman with whom he was living who had psychological and behavioral problems and

the son's psychologist believed there would be a risk of "regression and harm if [the] defendant were incarcerated"); United States v. Gaskil, 991 F.2d 82, 85-86 (3d Cir, 1993) (departing downward where the defendant's wife suffered from chronic and severe depression rendering her unable to work, manage her life, or take her medication and the defendant was her sole caregiver); United States v. Moy, 1995 WL 311441, at *33 (N.D. Ill. May 18, 1995) (granting downward departure where defendant was the only person who could care for his seriously ill wife).

Accordingly, this Court will not exercise its discretion to depart downward from the Guidelines and DENIES Fassnacht's motion for downward departure under section 5H1.6.

### E.  Aberrant Behavior

In addition, Defendants seek a departure based on the contention that their conduct in obstructing justice was a single act of aberrant behavior. The Seventh Circuit recognizes that the Guidelines permit a sentencing court to grant a downward departure if the criminal act which the defendant was charged with was a "single instance of aberrant behavior." United States v. Carey, 895 F.2d 318, 324 (7th Cir. 1990). To qualify as aberrant behavior the criminal conduct must constitute "a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning because an act which occurs suddenly and is not the result of a continued reflective process is one for which the defendant may not be arguably accountable." Id. at 325. In determining aberrant behavior, the court may look "at the defendant's motivation and the presence or absence of any psychological disorders that the defendant was suffering from, [and] whether the defendant was operating under extreme pressures." United States v. Iaconetti, 59 F. Supp. 2d 139, 145 (D. Mass. 1999). Additionally, the court may find that aberrant behavior was

11

caused by "temporary and extreme family stress." United States v. DeRoover, 36 F. Supp. 2d 531, 533 (E.D.N.Y. 1999).

Here, as explained in more detail in this Court's prior opinion, the Court finds that Defendants' conduct here was not "a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning." The evidence presented at trial showed that after learning of the IRS and grand jury investigation, Defendants proceeded to concoct a plan to end the investigation. The plan called for an individual named Ed Burke, a citizen of Switzerland, to come forward and falsely state that the $1.35 million in the LPM Inc. account in Bermuda was a finders fee which he earned for introducing LPM to ADIA. In exchange for this story, Burke was to be paid 10 to 20 percent of the $1.35 million. To corroborate Burke's story, Defendants conspired to prepare false documents including invoices, corporate records, and phone and travel records.

Accordingly, this Court will not exercise its discretion to depart downward from the Guidelines and DENIES Defendants' motion for a departure based on aberrant behavior.

### F. Minimal Participation

Defendants also contend that a downward departure is proper under section 3B1.2(b) because they minimally participated in the scheme to obstruct justice. Section 3B1.2(b) allows a court to depart two levels if defendant is a minor participant. Application Note 3 defines a "minor participant" as a participant who is less culpable than "most of the other participants." In cases involving a conspiracy, an offense level reduction under section 3B1.2 is appropriate only if the defendant was substantially less culpable than the conspiracy's other participants. United States v. Montenegro, 231 F.3d 389, 395-96 (7th Cir.2000). The defendant bears the burden of

12

proving, by a preponderance of the evidence, that he is entitled to a minor participant reduction. United States v. Mitchell, 178 F.3d 904, 910 (7th Cir.1999). Downward adjustments for minimal participant status should be used "infrequently." U.S.S.G. § 3B1.2, comment (n.2).

Here, the evidence presented at trial showed that there were three participants in the scheme to obstruct justice – Defendants and Newell. As discussed in more detail in this Court's prior opinion, the Court finds that neither Defendant qualifies for a minor participant reduction under section 3B1.2. For example, the Government presented evidence showing that Malanga and Fassnacht conspired to ensure that Burke would "back-up" Defendants' story to the IRS. In exchange for providing the finders fee story, Burke was to receive ten to twenty percent of the funds from the Bermuda account. To corroborate Burke's story, Fassnacht stressed to Newell the importance of having Burke provide an invoice or "any other documentation" for the work he allegedly did for LPM in 1994. Likewise, Malanga told Newell that they would have to put together documents to support Burke's story. Subsequently, at Defendants' direction, Newell received a false invoice from Burke in Switzerland for $1.35 million for a finders fee he allegedly earned in 1993-94 for introducing ADIA and LPM. Additionally, Newell, at the direction of Defendants, created a false "itinerary" setting forth the chronology of the false finders fee story.

Consequently, this Court finds that neither defendant is substantially less culpable than the other participants, and therefore, will not exercise its discretion to depart downward from the Guidelines and DENIES the motion for downward departure based on minor participation. See Montenegro, 231 F.3d at 395-96.

13

## G. Totality of the Circumstances

Finally, Defendants contend that "[e]ven if this Court determines that none of the individual factors discussed above justifies a downward departure for defendants, this Court can consider these factors in the aggregate." Even in the aggregate, this Court finds that the above factors do not justify this Court departing from the Guidelines, and therefore, DENIES Defendants' motion on this ground.

In sum, for the reasons set forth above, this Court will not exercise its discretion to depart downward from the Guidelines and DENIES Defendants' motions for downward departure.

## III. Motion for Upward Departure

The Government has moved for an upward departure on the grounds that a base offense level of 13 "does not account for the defendants' related crime of tax evasion." Therefore, according to the Government, because the obstruction of justice conduct was taken to facilitate tax evasion, the Court should depart upward 6 levels.

As explained above, however, this Court, the PSR, and the Guidelines have taken into consideration the tax evasion conduct in determining Defendants' base offense level. Pursuant to section 2J1.2(c)(1), this Court looked to section 2X3.1(a), which requires the Court to take the base offense level for the underlying offense and reduce it by six levels. Because Defendants were convicted of obstructing a grand jury investigation into tax evasion, the Probation Department looked to the Guideline sections which govern tax evasion (sections 2T1.1 and 2T1.4). Under these sections the base offense level is 19, and by subtracting 6 levels, per section 2X3.1(a), the Probation Department arrived at a base offense level of 13.

Accordingly, this Court will not exercise its discretion to depart upward from the

14

Guidelines and DENIES the Government's motion for an upward departure.